# United States Bankruptcy Court
# Northern District of Florida

In re    **FAITH CHRISTIAN FAMILY CHURCH OF PANAMA CITY BEACH, INC.**

           Debtor(s)

Case No.   *11-50288*

Chapter   **11**

 

# FAITH CHRISTIAN FAMILY CHURCH OF PANAMA CITY BEACH, INC.

### DISCLOSURE STATEMENT

**CHARLES M. WYNN LAW OFFICE, P.A.**

**CHARLES M. WYNN, ESQ.**

**PO BOX 146**

**MARIANNA, FL  32447-0146**

**850-526-3520**

**ATTORNEY FOR THE DEBTOR**

wynnlawbnk@earthlink.net



*Table of Contents*

Page
I.      Introduction
        A.      Purpose of this document
        B.      Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing
        C.      Disclaimer

II.     Background
        A.      Description and History of Debtor's Business
        B.      Insiders of the Debtor
        C.      Management of the Debtor Before and During the Bankruptcy
        D.      Events Leading to a Chapter 11 Filing
        E.      Significant Events During the Bankruptcy Case
        F.      Projected Recovery of Avoidable Transfers
        G.      Claims Objections
        H.      Current and Historical Financial Conditions

III.    Summary of the Plan of Reorganizations and Treatment of Claims and Equity Interests
        A.      What is the Purpose of the Plan of Reorganization?
        B.      Unclassified Claims
        C.      Classes of Claims and Equity of Interests
        D.      Means of Implementing the Plan
        E.      Risk Factors
        F.      Executory Contracts and Unexpired Leases
        G.      Tax Consequences of Plan

IV.     Confirmation Requirements and Procedures
        A.      Who May Vote or Object
        B.      Votes Necessary to Confirm the Plan
        C.      Liquidation Analysis
        D.      Feasibility

V.      Effects of Confirmation of the Plan
        A.      Discharge of Debtor
        B.      Modification of Plan
        C.      Final Decree

I.      INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") in the Chapter 11 case of Faith Christian Family Church of Panama City Beach, Inc. (the "Debtor").  This Disclosure Statement contains information about the Debtor and describes the Plan (the "Plan") filed by Faith Christian Family Church of Panama City Beach, Inc.  A full copy of the Plan is attached to this Disclosure Statement as Exhibit A.  Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.

A.      Purpose of This Document

This Disclosure Statement describes:

>       The Debtor and significant events during the bankruptcy case,

>       How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed),

>       Who can vote on or object to the Plan,

>       What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,

>       Why Faith Christian Family Church of Panama City Beach, Inc. believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and

>       The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement.  This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

B.      Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement.  This section describes the procedures pursuant to which the Plan will or will not be confirmed.

3

1.    Time and Place of the Hearing to Approve This Disclosure Statement and Confirm the Plan

The hearing at which the Court will determine whether to approve this Disclosure Statement and confirm the Plan will take place pursuant to the Notice of Hearing which is attached to this Disclosure Statement or will be mailed to you by the Court. The hearing will be held at the US Courthouse, 30 W. Government Street, Panama City, FL on the date and time of the Notice unless otherwise indicated within the Notice. Please read the Notice carefully.

2.    Deadline For Voting to Accept or Reject the Plan

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to Charles M. Wynn, Esq., PO Box 146, Marianna, FL 32447. See Section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by the date set in the Court Order which accompanies the Plan, Disclosure Statement and Ballot or it will not be counted.

3.    Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon the parties indicated in the Order and Notice of Hearing which is included with this Disclosure statement or sent separately by the Court.

4.    Identity of Person to Contact for More Information

If you want additional information about the Plan, you should contact Charles M. Wynn, Esq. at Charles M. Wynn Law Offices, P. A., P.O. Box 146, 4436 Clinton Street, Marianna, FL 32447, (850) 526-3520.

C.    Disclaimer

The Court is expected to approve this Disclosure Statement at the hearing which is noticed as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted. The Court's approval of this Disclosure Statement is subject to final approval at the hearing on confirmation of the Plan. Objections to the adequacy of this Disclosure Statement may be filed as set forth in the Order and Notice of Hearing.

II.    BACKGROUND

A.    Description and History of the Debtor's Business

The Debtor is a not for profit corporation. The ministry was believed to have been founded in April of 1980. The records of the Secretary of State show a corporate filing of January 22, 1981 as the corporate filing date. The founding pastors were Steve and Rhonda Morin who served as two of the

4

three original Board of Directors along with Julie Chapman. The Morins served until the beginning of 1982 when they resigned and the pastoral position was assumed by evangelist Leo C. Price and the board was expanded from three to five members. The new board consisted of Leo C. Price, Donald P. Stephenson, Daniel Bohler, James R. Paterson and Markus Q. Bishop.

In June of 1982, Leo C. Price resigned as pastor and director. The board requested Markus Q. Bishop to serve as interim pastor. In October, 1982 Markus Q. Bishop assumed the responsibility of full time pastor and was elected as Chairman of the Board.

In March, 1996, the name of the corporation was officially changed to Faith Christian Family Church of Panama City Beach, Inc. d/b/a Faith Christian Family Church.

In 1984 the church purchased its first property, a 5.2 acres tract located at 13300 Back Beach road on Panama City Beach, Florida. The Family Life Center was completed and dedicated in November, 1985. In 1987, an adjacent 3.5 acres was purchased which became the location for the Educational annex. It was completed in 1992. In 1998 a Youth facility was purchased at 9721 Thomas Drive. An adjacent .5 acre tract located next door to the Youth facility was purchased in 2005. In 2003 the church's parsonage located at 3703 Preserve Bay Blvd., Panama City Beach, FL was completed and occupied by the pastor.

Over the course of the church's acquisition of properties and construction of facilities, the church had accumulated three loans with Bay Bank and Trust of Panama City totaling approximately $2,750,000.00. These loans were cross collateralized by all properties. In August, 2008 the indebtedness was refinanced by Suntrust Bank which took a secured position on the main facility located on Panama City Beach Parkway, formerly known as Back Beach Road.

The downturn in the local economy coupled with the BP oil spill impacted the ministry's ability to service its debt with Suntrust Bank.

The ministry has filed a claim with BP estimated to be approximately $700,000.00 which has not been approved by BP as of the filing of this Disclosure Statement.

The ministry has also listed the parsonage for sale at a price of $4.2 million.

B.      Insiders of the Debtor

The following is a detailed list of the names of Debtor insiders as defined in §101(31) of the United States Bankruptcy Code (the "Code"). No shares of stock are issued as the Debtor is a 501 ( c )(3) corporation.

Markus Q. Bishop
Richard C. Bishop
John D. Copeland

The following for each insider is list all compensation paid by the Debtor or its affiliates to that person or entity prior to the commencement of the Debtor's bankruptcy case, as well as compensation paid during the pendency of this chapter 11 case:

| Name | Title | Duties & Responsibilities | Salary | Fringe Benefits |
|------|-------|---------------------------|--------|-----------------|
| Markus Q. Bishop | President/ and Pastor | Responsible for all ministerial and administrative activities of the church | $1,400.00 per week plus housing allowance of $1,000 per week | 1) Drives ministry vehicle 2) Gasoline 3) Cell phone 4) Health and Dental Insurance 5) Resides in parsonage |

### C.    Management of the Debtor Before and During the Bankruptcy

During the two years prior to the date on which the bankruptcy petition was filed, the officers, directors, managers or other persons in control of the Debtor (collectively the "Managers") were Markus Q. Bishop, President and Pastor, Richard C. Bishop, Director, and John D. Copeland, Director. The ministry employed 8 full time employees in 2009 and has reduced to two full time employees, which includes the pastor, and two part time employees.

The Managers of the Debtor during the Debtor's chapter 11 case have been the same.

The present management of the Debtor is as follows:

Markus Q. Bishop                President and Pastor.  Pastor Bishop is responsible for all
                                ministry activities of the church and its overall administration.

Hours of Operation:

The ministry operates five days a week; except for Monday and Friday.  Business hours are 9:00 am to 3:00 pm, except when weekly services are held.

After the effective date of the order confirming the Plan, the directors, officers, and voting Board Members of the Debtor, (collectively the "Post Confirmation Managers"), will be the same as those who managed the Debtor during the Chapter 11.   Their compensation is expected to remain unchanged.

6

### D.    Events Leading to Chapter 11 Filing

The Debtor sought relief under Chapter 11 when the loan to Suntrust Bank defaulted and a foreclosure sale was scheduled to sell the ministry's main campus.

### E.    Significant Events During the Bankruptcy Case

Since the case has been filed the Debtor has operated as a Debtor in Possession under the Code. The parsonage is listed for sale and there are active prospects for its sale. Should the parsonage sell prior to confirmation, the Debtor will be able to pay Suntrust and all creditors in full, except for Margie Negrin Bishop whose claim is disputed.

The Debtor has timely filed its Monthly Operating Reports.

### F.    Projected Recovery of Avoidable Transfers

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions as none have been identified at this time.

### G.    Claims Objections

All objections to claims have been filed prior to the hearing on the Disclosure Statement and Plan. If an objection to a claim is pending and unresolved and even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

As required by local rules, all objections to claims will be filed more than 45 days prior to the date of confirmation hearing.

### H.    Current and Historical Financial Conditions

The identity and fair market value of the estate's assets are listed in Exhibit B. The valuation was by the Debtor, the Bay County Tax Assessor, Jean Mallory a certified personal property appraiser and by Jason P. Oakes, CCIM, Counts Real Estate Group, Inc.

A summary of the Debtor's periodic operating reports filed since the commencement of the Debtor's bankruptcy case will be attached as an Exhibit C prior to circulation to creditors unless circulation occurs prior to any reports being due. The Debtor's monthly operating reports are/or will be on file with the court and are available for inspection. Reports are due on the 20th of the month commencing on the 20th of the month following the filing of the Petition For Relief.

### I.    Post Confirmation Restructure

The Debtor intends to surrender sufficient real property to Suntrust Bank to satisfy its claim and to pay certain unsecured debt over a maximum period of time of 60 months.

III.   SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS
AND EQUITY INTERESTS

A.   What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes
the treatment each class will receive.  The Plan also states whether each class of claims or equity
interests is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the
amount provided by the Plan.

B.   Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code.  They are not
considered impaired, and holders of such claims do not vote on the Plan.  They may, however, object
if, in their view, their treatment under the Plan does not comply with that required by the Code.  As
such, the Plan Proponent has not placed the following claims in any class:

1.   Administrative Expenses

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which
are allowed under § 507(a)(2) of the Code.  Administrative expenses also include the value of any
goods sold to the Debtor in the ordinary course of business and received within 20 days before the
date of the bankruptcy petition.  The Code requires that all administrative expenses be paid on the
effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed
treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|------|----------------------|--------------------|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| Professional Fees, as approved by the Court.<br><br>Attorney fees paid by retainer of $12,000.00 has been paid by the Debtor. | Debtor's attorney's fees are expected to approximate $12,000.00 | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan. |

| | | |
|---|---|---|
| Accountant fees will be paid upon application and order of the Court. | | Accounting fees will be paid upon application and order of the Court. |
| Clerk's Office Fees | | Paid in full on the effective date of the Plan |
| Other administrative expenses | | Paid in full on the effective date of the Plan or according to separate written agreement |
| Office of the U.S. Trustee Fees | | Trustee fees are current and shall be paid for each quarter the case remains open. |

2.     Priority Tax Claims

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description (name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| Withholding and FICA Taxes | None | None | None |
| Unemployment Taxes - 2009 | None | None | |
| Unemployment Taxes | None | None | |

C.      Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1.      Classes of Secured Claims

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will [be classified as a general unsecured claim].

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| | Description | Insider (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 2 | *Secure claim of:* Name = **Ally Automotive Financing, Inc.**  Collateral Description = **2009 Cadillac Escalde**  Allowed Secured Amount = $64,380.36  Priority of lien = **1st** | No | Unimpaired | The allowed secured claim of Ally Automotive Financing, Inc. shall be unimpaired and paid according to the terms of the note and security agreement. |

| | Description | Insider (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 3 | Secured claim of: Leitz Music Company, Inc. | No | Unimpaired | The allowed secured claim of Leitz Music Company, Inc. shall be unimpaired and paid according to the terms of the note and security agreement. |
| 4 | Secured claim of: Maryanne and W. C. Grimsley, Jr. | No | Unimpaired | The allowed secured claim of Maryanne and W. C. Grimsley, Jr. shall be unimpaired and paid according to the terms of the note and security agreement. |
| 5 | Secured claim of: Suntrust Bank | No | Impaired | The allowed secured claim of Suntrust Bank will be satisfied from the surrender of real property. Suntrust can either elect Option A which is a surrender of a portion of the mortgaged property known as the educational center along with an easement to Hwy. 30A or Option B which is a surrender of the parsonage, which is not subject to the Bank's mortgage. Any surrender will be subject to taxes due the Bay County Tax Collector on either property and the Preserve Improvement Association, Inc. lien on the parsonage. |
| 6 | Secured claim of : The Preserve Improvement Association, Inc. | No | Impaired | The allowed secured claim shall be paid in full either by Suntrust Bank from exercising Option B under the Plan or by the Debtor making equal monthly payments over 36 months at 6% simple interest on the amount of the claim. |
| 7 - 12 | Secured tax claim of: The Bay County Tax Collector | No | Impaired | The secured real property tax claims of the Bay County Tax Collector shall be paid in full either through the surrender of property to Suntrust under the Plan (parsonage or educational facility) and the payment of the allowed claim with interest over 36 months. |
| 13 | Executory Contract of: De Lage Landen Financial Services | No | Impaired | The executory contract shall be rejected and the claim satisfied through the surrender of the copier. |
| 14 | Disputed claim of: Margie Negrin Bishop | Yes | Impaired | The claim of Margie Negrin Bishop is a disputed claim to be resolved through the action for dissolution of marriage pending between claimant and Markus Q. Bishop. In the event a liability is assessed against property of the Debtor, provision for payment over 360 months is provided for in the Plan. |

11

2.    *Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim.  However, a class of holders of such claims may vote to accept different treatment.

The following chart lists all classes containing claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| | Description | Impairment | |
|---|---|---|---|
| 1 | Priority unsecured claim of Marcus Q. Bishop for wages<br><br>Total amt of claims = $11,725.00 | Impaired | **The claimant as President and Pastor of the Debtor agrees to waive his priority claim and repayment on the unsecured portion for wages due until such time as the Plan has been substantially consummated and the Debtor is in a financial position to repay the claimant.** |

3.    *Classes of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.  All claims less than $250.00 shall be paid in full for administrative convenience as indicated on the attached Exhibit of Proposed Payments.

The following chart identifies the Plan's proposed treatment of Classes 3 and 4, which contain general unsecured claims against the Debtor:

| | Description | Impairment | Treatment |
|---|---|---|---|
| 15 | **1122(b) Convenience Class of claims of $1,200.00 or less.** | impaired | Allowed unsecured claims less than $1,200.00 shall be paid in full at no interest upon the effective date of confirmation. |
| 16 | General Unsecured Class consisting of Suntrust Visa | impaired | The claim shall be paid in full at 6% simple interest over 60 months commencing 30 days after the effective date of confirmation. |

4.     *Classes of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are equity interest holders.  In a partnership, equity interest holders include both general and limited partners.  In a limited liability company ("LLC"), the equity interest holders are the members.  Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

The following chart sets forth the Plan's proposed treatment of the class of equity interest holders:

| | Description | Impairment | Treatment |
|---|---|---|---|
| 17 | Equity interest holders<br>Markus Q. Bishop<br>Richard C. Bishop<br>John D. Copeland | Unimpaired | Equity security holders shall retain their positions as members of the not for profit corporation. |

### D.     Means of Implementing the Plan

1.     *Source of Payments*

Payments and distributions under the Plan will be funded by the following:

The Debtor will fund the Plan from general operations of the ministry.  Should the ministry receive payment on its pending BP, the funds will be used in funding the Plan and in the operation of the ministry.

2.     *Post-confirmation Management*

The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

| | Affiliations | Insider (yes or no)? | Position | Compensation |
|---|---|---|---|---|
| Markus Q. Bishop | President/Director | yes | President/Director | See II B, above |
| Richard C. Bishop | Director | Yes | Director | None |
| John D. Copeland | Director | Yes | Director | None |

### E.     Risk Factors

The proposed Plan has the following risks: There are no known major risk factors.

13

**F.  Executory Contracts and Unexpired Leases**

There are no executory contracts and unexpired leases that the Debtor will assume under the Plan. The Debtor rejects the copier lease with De Lage Landen Financial Services and agrees to surrender the collateral in satisfaction of the indebtedness.

All other executory contracts and unexpired leases have been rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

**G.  Tax Consequences of Plan**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

**IV.  CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

**A.  Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that there are 12 classes which are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.

1.

   *What Is an Allowed Claim or an Allowed Equity Interest?*

   Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been

14

filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

**The deadline for filing a proof of claim in this case was 12/28/2009**

      2.     *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

      3.     *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

- administrative expenses.

**Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.**

      4.     *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

**B.**     **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section B.2.

1.     *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2.     *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

**You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.**

**C.**     **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as Exhibit E.

**D.**     **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1.      *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the effective date of the Plan, and the sources of that cash are attached to this disclosure statement as Exhibit F.

2.      *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information. Those projections are listed in Exhibit G.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

## V.      EFFECT OF CONFIRMATION OF PLAN

### A.      DISCHARGE OF DEBTOR

*Compromise, Settlement and/or Discharge.* Upon substantial completion of payments under the Plan, the Debtor shall be discharged as provided by Chapter 11 of Title 11 of the United States Bankruptcy Code.

(a) *Scope.* Except as otherwise provided in the Plan or Confirmation Order, in accordance with section 1141(d)(1) of the Bankruptcy Code, entry of the Confirmation Order acts as a full compromise, release and settlement, effective as the Effective date, of all claims including claims arising from the surrender of real property in satisfaction of the allowed secured claims on investment property. The compromise, release, and settlement of all claims against the Debtor as included within the  Chapter 11 Plan, shall be effective as to each Claim against the Debtor regardless of whether a proof of claim there for was filed, whether the Claim is an Allowed Claim, whether the Claim has been asserted, or whether the holder thereof votes to accept the Plan. On the Effective Date, as to every compromised, settled, or discharged Claim, any holder of such Claim shall be precluded from asserting such Claim against the Debtor or the Reorganized Debtor's assets or properties, or any third party contracting pre-petition or post-petition with the Debtor, or any other or further Claim based upon any document, instrument, act, omission, transaction or other activity of any kind or nature relating to any Claim against the Debtor for deficiency from the liquidation of any real property.

(b) *Injunction.* In accordance with sections 105, 524 and 1141 of the Bankruptcy Code, the compromise and settlement and/or discharge provided by this section and by the Confirmation Order, *inter alia,* acts as an injunction against the commencement or continuation of any action, employment of process or act to collect, offset or recover the Claims discharged hereby and shall further act as a permanent injunction against any claimant from commencing any civil, administrative or other action against the Debtor, any officer, agent, or employee of the Debtor for any actions or liabilities arising from their employment, ownership or affiliation with the Debtor and not as a result of any personal guaranty on any indebtedness of the Debtor.

(c) *Satisfaction of Claims and Interests.* The treatment to be provided for respective Allowed Claims or Interests pursuant to the Plan shall be in full satisfaction, settlement, release and discharge of such respective Claims or Interests.

B.      **Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

Upon request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

C.      **Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

FAITH CHRISTIAN FAMILY CHURCH OF
PANAMA CITY BEACH, INC.,
/s/ Marcus Q. Bishop
Marcus Q. Bishop, Pres

/s/ Charles M. Wynn
**Charles M. Wynn, Esq**
Charles M. Wynn Law Offices, P.A.
PO Box 146
Marianna, FL  32447
(850) 526-3520
FL Bar No. 0241695
wynnlawbnk@earthlink.net

**EXHIBIT A**

**FAITH CHRISTIAN FAMILY CHURCH OF PANAMA CITY BEACH,   INC**

# PLAN

# United States Bankruptcy Court
## Northern District of Florida

In re   **FAITH CHRISTIAN FAMILY CHURCH OF PANAMA CITY BEACH, INC.**

_____   Case No.   _____

Debtor(s)   Chapter   **11**   _____

## PLAN OF REORGANIZATION
## ARTICLE I
## SUMMARY

This Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of **FAITH CHRISTIAN FAMILY CHURCH OF PANAMA CITY BEACH, INC.,** (the "Debtor") from cash flow from operations.

This Plan provides for **12** class of secured claims; **3** classes of unsecured claims; and **1** classes of equity security holders. Unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 100% on the dollar. This Plan also provides for the payment of administrative and priority claims in full on the effective date of this Plan .

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01   Class 1. All allowed claims entitled to priority under§507 of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)).

2.02   Class 2. The Claim of Ally Automotive Financing, to the extent allowed as a secured claim under § 506 of the Code.

2.03   Class 3. The claim of Leitz Music Company, Inc., to the extent allowed as a secured claim under § 506 of the Code.

2.04.   Class 4. The claim of Maryanne and W. C. Grimsley, Jr., as a secured claim under § 506 of the Code.

2.05   Class 5. The claim of Suntrust Bank, to the extent as allowed as a secured claim under § 506 of the Code.

1

2.06.   <u>Class 6.</u>   The claim of The Preserve Improvement Association, Inc., to the extent as allowed as a secured claim under § 506 of the Code.

2.07   <u>Class 7 – 12.</u>   The secured tax claims of the Bay County Tax Collector.

2.08   <u>Class 13.</u>   The claim of De Lage Landen Financial Services for a copier lease.

2.09   <u>Class 14.</u>   The disputed claim of Margie Negrin Bishop.

2.10   <u>Class 15.</u>   All unsecured claims allowed under §502 of the Code less than $1,200.00.

2.11   <u>Class 16.</u>   All unsecured claims allowed under § 502 of the Code.

2.12   <u>Class 17.</u>   All equity security holders of the Debtor.

**ARTICLE III**
**TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,**
<u>**U.S. TRUSTEE'S FEES, AND PRIORITY TAX CLAIMS**</u>

3.01   <u>Unclassified Claims.</u>   Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02   <u>Administrative Expense Claims.</u>   Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03   <u>Priority Tax Claims.</u>   Each holder of a priority tax claim will be paid in full on the effective date of this Plan.   There are no priority tax claims known to the Debtor.

3.04   <u>United States Trustee Fees.</u>   All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

**ARTICLE IV**
<u>**TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**</u>

4.01   Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|-------|------------|-----------|
| Class 1 - Priority Claims | impaired | Class 1 is unimpaired by this Plan, and each holder of a   Class 1 Priority Claim will be paid, in full, in cash, upon the later of the effective date of this Plan as defined in Article VII, or the date on which such claim is allowed by a final non-appealable order. |

2

| | | |
|---|---|---|
| | | The Priority wage claim of Markus Q. Bishop in the amount of $11,725.00 shall be waived and he shall be repaid by the Debtor once all allowed unsecured claims are satisfied or substantial performance has occurred under the terms of the Plan and the case is closed. |
| Class 2 – Ally Automotive Financing | Unimpaired | The allowed secured claim of Class 2 creditor; Ally Automotive Financing shall be unimpaired and shall be paid according to the terms of the note and security agreement. |
| Class 3 – Leitz Music Company, Inc. | Unimpaired | The allowed secured claim of Class 3 creditor; Leitz Music Company shall be unimpaired and shall be paid according to the terms of the note and security agreement. |
| Class 4 – Maryanne and W. C. Grimsley, Jr. | Unimpaired | The allowed secured claim of Class 4 creditor; Maryanne and W. C. Grimsley, Jr., shall be unimpaired and shall be paid according to the terms of the note and security agreement. |
| Class 5- Secured Claim of Suntrust Bank | impaired | Option A:<br><br>The Debtor shall surrender the following described real property in full satisfaction of the indebtedness due Suntrust Bank, to wit:<br><br>The three story educational annex, valued at $2.6 million, the one story day care valued at $150,000.00 and approximately 1 acres of real property valued at $350,000.00 on which the buildings are located along with an easement of approximately 25 feet along the west boundary property line running perpendicular to Highway 30A . The property to be surrendered is noted on the attached survey. The total value to be surrendered is approximately $3.1 million.<br><br>Said parcel is surrendered subject to the real property tax assessment due the Class 7 claim of the Bay County Tax Collector in the approximate amount of $1,014.12.<br><br>Option B:<br><br>In the alternative, the Class 5 creditor may elect to receive the following described property which is free and clear of liens, except as disputed real property tax claim of the Bay County Tax Collector for $40,194.96 and the claim of lien of The Preserve Improvement Association, Inc. which has filed a claim of lien in the amount of $3,577.05 in OR. Book 3323, Page 1639 of the |

Public Records of Bay County, Florida which would pass with the following described property:

Lots 56, 57 and 58, according to the plat of The Preserve on the Bay, Phase I, as recorded in Plat Book 16, Pages 23 and 24, in the office of the Clerk of the Circuit Court of Bay County, Florida.

Said parcel has a value of $4,200,000.00.

The property in Option B is listed for sale by the Debtor.   In the event the Debtor obtains a contract to purchase the real property prior to confirmation, the Debtor will sell the real property and pay the Class 5 creditor's claim in full.

The Class 5 secured creditor, Suntrust Bank shall file a release of lien on all other real property if it selects Option A or all real property subject to its mortgage, if it accepts Option B.

If Option B is selected and the Debtor has not obtained a contract to sell the real property prior to confirmation, the Debtor and all occupants of the residence described in Option B shall have 60 days from the effective date of confirmation to vacate the property and terminate all utilities to same.   The Debtor shall retain insurance on the property until same is surrendered.   In the event of a loss, the secured creditor would be paid the full amount of its claim, with interest and fees, and any balance shall be paid to the Debtor.

| | | |
|---|---|---|
| Class 6 – The Preserve Improvement Association, Inc. | Impaired | The allowed secured claim of the Class 6 creditor shall be paid in full from the surrender of the real property subject to the lien to Suntrust Bank or through equal monthly payments of $108.85 per month for 36 months at 6% simple interest with payments commencing on August 25, 2011 and the 25th of each month thereafter until the full amount of the claim is paid in full.   Upon payment in full, the claimant shall file a Satisfaction Lien in the public records of Bay County, Florida. |
| Class 7 – The Bay County Tax Collector | Impaired | The Bay County Tax Collector has a secured tax claim on the following described real property:<br><br>That portion of the West Half of the West Half of the Southwest Quarter of the Southwest Quarter of Section 22, Township 3 South, Range 16 West, Bay County, Florida, lying North of State Road No. 30A (U. S. Highway 98, having a 200 foot right of way), containing 3.40 acres, more or less. |

| | | |
|---|---|---|
| | | The Class 7 claim shall be paid in full by either Suntrust Bank if it elects Option A under the Plan. If Option A is not selected by Suntrust, the secured tax claim shall be paid in full by the Debtor in equal monthly payments at 18% interest, or such lower rate if a tax certificate is issued, over 36 months with equal monthly payments of $36.69 per month commencing thirty days after the effective date of confirmation. |
| Class 8 – The Bay County Tax Collector | Impaired | The Bay County Tax Collector has a secured tax claim on the following described real property:<br><br>The East-half of the West-Half of the Southwest Quarter of the Southwest Quarter of Section 22, Township 3 South, Range 16 West, lying North of the right-of-way of State Road 30-A.<br><br>The secured tax claim of approximately $641.41 shall be paid in full by the Debtor in equal monthly payments at 18% interest, or such lower rate if a tax certificate is issued, over 36 months with equal monthly payments of $23.21 per month commencing thirty days after the effective date of confirmation. |
| Class 9 – The Bay County Tax Collector | Impaired | The Bay County Tax Collector has a secured tax claim on the following described real property:<br><br>Parcel Identification Number: 34859-000-000<br><br>Beginning at the Southwest corner of the Southeast Quarter of the Southeast Quarter of Section 36, Township 3 South, Range 16 West, Bay County, Florida and more particularly described in O. R. Book 2615 page 1001, et. seq. of the Public Records of Bay County, Florida.<br><br>The secured tax claim of approximately $4,974.19 shall be paid in full by the Debtor in equal monthly payments at 18% interest, or such lower rate if a tax certificate is issued, over 36 months with equal monthly payments of $179.96 per month commencing thirty days after the effective date of confirmation. |

| Class 10 – The Bay County Tax Collector | Impaired | The Bay County Tax Collector has a secured tax claim on the following described real property:<br><br>Real property known as Youth Building in OR Book 1804 Page 49 - Bay County Property Appraiser's RE# 34856-000-000<br><br>The secured tax claim of approximately $626.92 shall be paid in full by the Debtor in equal monthly payments at 18% interest, or such lower rate if a tax certificate is issued, over 36 months with equal monthly payments of $22.68   per month commencing thirty days after the effective date of confirmation. |
|---|---|---|
| Class 11 – The Bay County Tax Collector | Impaired | The Bay County Tax Collector has a secured tax claim on the following described real property:<br><br>Lot 8, Less and Except the West 15 feet thereof in Block "A", Greens West, as per plat thereof on file in the Office of the Clerk of the Circuit Court of Bay County, Florida in Plat Book 11, page 100.<br><br>The secured tax claim of shall be paid in full by the Debtor in equal monthly payments at 18% interest, or such lower rate if a tax certificate is issued, over 36 months with equal monthly payments of commencing thirty days after the effective date of confirmation. |
| Class 12 – The Bay County Tax Collector | Impaired | The Bay County Tax Collector has a disputed secured tax claim on the following described real property:<br><br>Lots 56, 57 and 58, according to the plat of The Preserve on the Bay, Phase I, as recorded in Plat Book 16, Pages 23 and 24, in the office of the Clerk of the Circuit Court of Bay County, Florida.<br><br>The disputed secured tax claim of the Bay County Tax Collector shall be paid in full if the Class 5 Creditor, Suntrust Bank, elects Option B under the Plan.   Payment shall be made by Suntrust Bank in the amount of the claim as filed by the tax collector.<br><br>In the event Option B is not selected, the allowed amount of the claim shall be paid in full, when the amount of the claim is determined through the action pending in the Circuit Court in and for Bay County, Florida.   Payment shall be in equal monthly installments at a rate not to exceed 18% to be |

6

| | | |
|---|---|---|
| | | paid over 60 months from the date the amount of the claim is determined.   If more than one taxable year is involved, each taxable year shall be amortized separately. |
| Class 13- De Lage Landen Financial Services | Impaired | De Lage Landen Financial Services has a lease on a copier which the Debtor rejects and surrenders the copier in satisfaction of the lease. |
| Class 14 – Margie Negrin Bishop | Impaired | The Class 14 creditor is the wife of Markus Q. Bishop. The Class 14 creditor and her husband, Markus Q. Bishop are presently involved in a separate action for dissolution of marriage and Margie Negrin Biship is asserting an undivided one-half interest in all property of the Debtor. Her claim is disputed and the nature and extent of her claim shall be as determined by the Circuit Court in and for Bay County, Florida subject to the overall settlement with creditors as provided for by the Debtor's Plan.<br><br>In the event the Debtor is found to owe a monetary award, or Markus Q. Bishop is found to owe a monetary award which would be secured by the assets of the Debtor, pursuant to the action for dissolution of marriage, the amount determined to be due shall be paid by the Debtor at the statutory rate of interest, or such lower rate as set by the court handling the dissolution of marriage, over 360 months commencing thirty days after the amount of such award becomes final and non-appealable. |
| Class 15 - General Unsecured Creditors | impaired | Allowed unsecured claims of **less than $1,200.00 according to the attached payment schedule** shall be paid in full within thirty (30) days after the effective date of the Plan for administrative convenience. |
| Class 16 - General Unsecured Creditors | impaired | General allowed unsecured claim of Suntrust for a Visa card in the approximate amount of $15,308.74 shall be paid in full over 60 months at 6% simple interest with monthly payments of $296.04 per month.   Payments shall commence thirty days after the effective date of confirmation. The Debtor shall execute a note according to the terms set forth above. |
| Class 17 - Equity security Holders | Unimpaired | The equity security holders shall retain their interest in the reorganized debtor which is a not for profit corporation. |

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02    Delay of Distribution on a Disputed Claim.   No distribution will be made on account of a disputed claim unless such claim is allowed by a non-appealable order.   The Bay County Tax Collector has a disputed claim as noted in Class 12, above.

5.03    Settlement of Disputed Claims.   The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

5.04    Objections to all claims which are disputed have been filed or will be filed prior to hearing on the Disclosure Statement.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Assumed Executory Contracts and Unexpired Leases.

(a)    The Debtor has rejected the executory contract of Class 13 creditor, De Lage Landen Financial Services and the collateral is surrendered in satisfaction of the indebtedness.

(b)    The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the effective date of this Plan.   A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than **twenty-one** (21 ) days after the date of the order confirming this Plan or the Order allowing the rejection, which ever even occurs first.

8

# ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01    The Debtor shall fund the Plan from the normal operation of the Debtor's ministry.

7.02    The officers and directors of the Debtor will remain the same as previously outlined in the Disclosure Statement.

# ARTICLE VIII
## GENERAL PROVISIONS

8.01    Definitions and Rules of Construction.    The definitions and rules of construction set forth in §§101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

8.02    Effective Date of Plan.    The effective date of this Plan is thirty days following the date of the entry of the order of confirmation providing no appeal is pending.    But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

8.03    Severability.    If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04    Binding Effect.    The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05    Captions.    The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06    Controlling Effect.    Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

9

## ARTICLE IX
## COMPROMISE, RELEASE, INDEMNIFICATION, ABANDONMENT AND SETTLEMENT OF CLAIMS

9.01.    *Compromise, Settlement and/or Discharge.*  Upon substantial completion of payments under the Plan, the Debtors shall be discharged as provided by Chapter 11 of Title 11 of the United States Bankruptcy Code.

(a) *Scope.*  Except as otherwise provided in the Plan or Confirmation Order, in accordance with section 1141(d)(1) of the Bankruptcy Code, entry of the Confirmation Order acts as a full compromise, release and settlement, effective as the Effective date, of all claims including claims arising from the surrender of real property in satisfaction of the allowed secured claims on investment property. The compromise, release, and settlement of all claims against the Debtor as included within the Chapter 11 Plan, shall be effective as to each Claim against the Debtor regardless of whether a proof of claim there for was filed, whether the Claim is an Allowed Claim, whether the Claim has been asserted, or whether the holder thereof votes to accept the Plan.   On the Effective Date, as to every compromised, settled, or discharged Claim, any holder of such Claim shall be precluded from asserting such Claim against the Debtor or the Reorganized Debtor's assets or properties, or any third party contracting pre-petition or post-petition with the Debtor, or any other or further Claim based upon any document, instrument, act, omission, transaction or other activity of any kind or nature relating to any Claim against the Debtor for deficiency from the liquidation of any real property.

(b) *Injunction.* In accordance with sections 105, 524 and 1141 of the Bankruptcy Code, the compromise and settlement and/or discharge provided by this section and by the Confirmation Order, *inter alia,*   acts as an injunction against the commencement or continuation of any action, employment of process or act to collect, offset or recover the Claims discharged hereby and shall further act as a permanent injunction against any claimant from commencing any civil, administrative or other action against the Debtors, any officer, agent, or employee of the Debtor for acts as an officer or director of the Debtor.

(c) *Satisfaction of Claims and Interests.*  The treatment to be provided for respective Allowed Claims or Interests pursuant to the Plan shall be in full satisfaction, settlement, release and discharge of such respective Claims or Interests.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

11.01    The Court shall retain jurisdiction until the estate is closed or this case is dismissed to hear and resolve all disputes between the Debtor and any creditor, including but not limited to disputes as to validity, amount and classification of any claim and disputes with creditors who are being paid directly within this Plan.

11.02    Possession of the Debtor's property shall remain with the Debtor and except as provided in this Plan, title to Debtors' property shall vest in the Debtor upon confirmation of a Plan free and

10

clear of all liens and encumbrances except as otherwise provided for herein.

       11.03     Substantial Completion of the Plan.   Substantial completion of the Plan shall occur after the effective date of confirmation and upon the Debtor executing notes with creditors provided for under the Plan and commencing payment thereon.

       11.04     Anything herein to the contrary notwithstanding, the Debtor does not, by filing this Plan or seeking confirmation, waive its right to request that this case be dismissed at any time prior to or after confirmation, and the Debtor specifically reserves such right.

Respectfully submitted,

                              Faith Christian Family Church of
                              Panama City Beach, Inc.

By:   /s/ Markus Q. Bishop, Pres.
          **Markus Q. Bishop, Pres.**
          The Plan Proponent


By:   /s/ Charles M. Wynn
          **Charles M. Wynn**
          Charles M. Wynn Law Offices, P.A.
          PO Box 146
          Marianna, FL   32447
          (850) 526-3520
          FL Bar No.  0241695
          Attorney for the Plan Proponent
          wynnlawbnk@earthlink.net

11



**Figure 1 – Site Plan**



*** SKETCH NOT DRAWN TO SCALE***

# FAITH CHRISTIAN FAMILY CHURCH OF PANAMA CITY BEACH,  INC

## EXHIBIT B - IDENTITY AND VALUE OF MATERIAL ASSETS OF DEBTOR

| Asset | Value |
|---|---|
| 3.4 ACRE PARCEL (part of the sanctuary property financed with Suntrust) OR Book 1154 Page 131 | $2,998,625.00 |
| East half of the West of the SW ¼ of the SW ¼ of Section 22 (part of the sanctuary property financed with Suntrust) OR Book 939 Page 1422 | $2,600,000.00 |
| Lot 8 (part of the sanctuary property financed with Suntrust) OR Book 1028 Page 204 | $50,000.00 |
| Real Property known as Youth Building in OR Book 1804 Page 49 – Bay County Property Appraiser's RE#34856-000-000 | $1,125,584.00 |
| Real Property known as Youth Building in OR Book 2615 Page 1001 – Parcel Identification Number 34859-000-000 | $412,470.00 |
| Real Property known as Parsonage – Lots 56, 57, 58 OR Book 2012 Page 424; Parcel ID numbers 31365-556-000; 31365-557-000; 31365-558-000 | $4,000,000.00 |
| Oriental Rugs located in parsonage | $22,000.00 |
| BP Claim | Unknown |
| 2009 Mercedes CLS 550 | $45,925.00 |
| 2009 Cadillac Escalade | $51,275.00 |
| Inventory of debtor appraised by Jean Mallory with Mallory Appraisals | $29,490.00 |
| Checking Account Balance | $4,100.00 |

**EXHIBIT C**

**FAITH CHRISTIAN FAMILY CHURCH OF PANAMA CITY BEACH,   INC**

**FIRST MONTHLY REPORT NOT DUE UNTIL 6/20/2011**

|          | Income | Expenses | Net Income |
|----------|--------|----------|------------|
| May 2011 |        |          |            |

# United States Bankruptcy Court
## Northern District of Florida

In re   Faith Christian Family Church of Panama City Beach, Inc

Debtor(s)

Case No.

Chapter    11

## EXHIBIT E
## LIQUIDATION SUMMARY

| Description | Amount |
|---|---|
| Total Property Value | 11,335,369.00 |
| Less: | |
| Schedule D. Secured Claims | 3,275,189.77 |
| Schedule E. Priority Claims | 11,725.00 |
| Schedule C. Exemptions | 0.00 |
| Administrative Costs | 0.00 |
| | ----------------- |
| Available to General Unsecured | 8,048,454.23 |
| Total General Unsecured | 74,561.77 |
| Percent Distribution | 100% |
| Details: | |
| Property from Schedule A. | 11,186,679.00 |
| Property from Schedule B. | 148,690.00 |
| Unsecured from Schedule D. | 27,867.04 |
| Includes Avoided Liens | 0.00 |
| Unsecured from Schedule E. | 30,275.00 |
| Unsecured from Schedule F. | 16,419.73 |

**EXHIBIT F**

**CASH ON HAND ON THE EFFECTIVE DATE OF THE PLAN**

**for FAITH CHRISTIAN FAMILY CHURCH OF PANAMA CITY BEACH, INC**

**Cash on hand on effective date of plan      5,074.38* + 12,000** = ____17,074.38____**

        *This figure is calculated by taking the excess from the debtors
        income and expense schedules and multiplying it by 2 for the
        time period between now and the effective date of the plan.

Less -

    Amount of administrative expenses payable on effective date of Plan __0.00_____
    *(Attorney's fees are held in the attorney's trust account pending approval;*
    *$12,000.00  is held by the attorney***

    Amount of statutory costs and charges                    __0.00_____

    Amount of cure payments for executory contracts          __0.00_____

    Other Plan Payments due on effective date of the Plan ***    __1,767.94_____
        ***This must be paid within 30 days of confirmation.
        *This figure does not include payments for Class 3, 11 or*
        *12 as these payment amounts are not known at this time.*
        **Balance after paying these amounts**          **0.00**_____

The sources of the cash Debtor will have on hand by the effective date of the Plan are estimated
as follows:

__4,100.00___        Cash in Debtor's bank account now

+ _974.38_____      Additional cash Debtor will accumulate from net earnings between now
                  and the effective date of the Plan - (if December) *[normal monthly income*
                  *as reflected on income and expense schedules filed with the Court]*

+__0.00_____      Borrowing *[separately state the terms of repayment]*

+__0.00_____      Capital contributions

+__12,000_____    Other *(funds held in attorney's trust account to be applied to fees and*
                  *costs upon court approval)*

_17,074.38 _____    **Total** *[This number should match "cash on hand" figure noted above]*



**Figure 1 - Site Plan**



*** SKETCH NOT DRAWN TO SCALE***